UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-CV-24072-JLK

FRANK SANCHEZ and AGUSTIN PINO,

Plaintiffs,

v.

SONY ELECTRONICS, INC.,

Defendant.
_____/

## ORDER GRANTING FINAL SUMMARY JUDGMENT FOR DEFENDANT SONY ELECTRONICS, INC.

**THIS CAUSE** comes before the Court upon Defendant Sony Electronics, Inc.'s ("Sony") Motion for Summary Final Judgment (DE 27), filed February 4, 2019.[1]

### I. BACKGROUND

This employment discrimination case arises from the termination of two employees of a now-closed retail electronics store in Dolphin Mall in Miami, Frank Sanchez and Agustin Pino. Sony terminated Sanchez terminated as Store Manager in August 2013, and Pino as Retail Assistant Store Manager in December 2013 (DE 28, ¶¶ 10, 67). The store was closed in 2014 "as part of a multi-store closure plan" (*id.* ¶ 7).

In January 2014, Sanchez and Pino each filed charges with the Florida Commission on Human Relations ("FCHR") (DE 38-1; DE 38-2). On August 18, 2017, after no determination by the FCHR, Plaintiffs brought claims in state court for age and national origin discrimination as to both Sanchez and Pino, and retaliation as to Sanchez, pursuant to the Florida Civil Rights Act, Fla Stat. §§ 760.01–760.11 (DE 1-2, at 5–12).

---

[1] The Court has also considered Plaintiffs' Response in Opposition (DE 36), filed February 27, 2019; and Defendant's Reply (DE 41), filed March 18, 2019.

On November 3, 2017, Sony removed the case to this Court under diversity of citizenship, alleging that about six months of Sanchez's back pay (from the date of Sanchez's termination through the date the store closed) would comfortably exceed the $75,000 jurisdictional threshold (*see* DE 1, at 2–4). After the January 30, 2019 deadline for all discovery, Sony moved for summary judgment, arguing that Plaintiffs have not stated a prima facie case for discrimination or retaliation, and regardless Sony had legitimate, non-discriminatory reasons for the terminations (DE 27).

## II. DISCUSSION

### A. Legal Standard on Summary Judgment

Summary judgment is appropriate where there is "no *genuine* issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is genuine if a reasonable jury could return a verdict for the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). A fact is material if it may affect the outcome of the case under the applicable substantive law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). If a reasonable fact finder could draw more than one inference from the facts, creating a genuine issue of material fact, summary judgment should not be granted. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The moving party has the burden of establishing both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).

### B. Florida Civil Rights Act

Claims for discrimination and retaliation brought pursuant to the Florida Civil Rights Act, Fla Stat. §§ 760.01–760.11 ("FCRA") have been analyzed under the Title VII framework. *See, Albra v. Advan, Inc.*, 490 F.23d 826, 834 (11th Cir. 2007); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000).

2

### 1. Discrimination

Under the *McDonnell Douglas* framework, in the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of discrimination using circumstantial evidence, if the plaintiff shows he or she (1) belongs to a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or a similarly-situated employee outside the protected class was treated more favorably. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Upon the plaintiff establishing a prima facie case for discrimination, the burden then shifts to the employer to rebut the presumption of discriminatory intent by showing a legitimate, nondiscriminatory reason for its action, *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). Upon which, the burden finally shifts back to the plaintiff who to prevail must then show that the reason offered by the employer is pretextual. *Id.* at 255–56.

### 2. Retaliation

To establish a prima facie case for retaliation, a plaintiff must show that: "(1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). Under the FCRA, a protected activity is an employee either "oppos[ing] any practice which is an unlawful employment practice under this section," or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this section." Fla. Stat. § 760.10(7).

## C. The Record Does Not Support that Plaintiff Sanchez Was Terminated Due to His Age or National Origin

### 1. Direct Evidence

In their Complaint, Plaintiffs alleged a prima facie case for Plaintiff Sanchez's discrimination;[2] however, at the close of discovery Plaintiffs have provided almost no evidence to substantiate these allegations.[3] The only direct evidence of discrimination that Sanchez offers in his own deposition is that Sandi Olea the District Manager (who is herself Hispanic and over the age of 50 (DE 28, ¶ 7; DE 37, ¶ 7)), a handful of times commented that there were too many Hispanic employees and that they were speaking Spanish too much:

> Q    When did Miss Olea make reference to you having too many Hispanics in the store?
> A    The first time she came to my store.
> Q    When was that?
> A    I don't remember the date.
> Q    How long after she became the DM for your store?
> A    Maybe on the first, second week after she became DM.
> Q    What percentage of your work force was Hispanic, to your knowledge?
> A    Eighty, 85 percent.
> . . .
> Q    You had mentioned before that on [Olea's] first visit to your store [she said] there were too many Hispanics or words to that effect. Correct?
> A    Yes, sir.
> . . .
> A    She talked about it maybe two or three times.

(DE 29-2, at 29:22–30:7; 52:20–53:5). Regarding age, Sanchez testified "he knew from the beginning" and agreed he had a "gut feeling" that he was terminated on the basis of his age (*see id.* at 114:10-14). Pino testified at this deposition that Sanchez told him of comments Olea had made to Sanchez

---

[2] In their Complaint, Plaintiffs alleged that Sanchez was fired after his supervisor Sandi Olea, the District Manager, asked "why there were so many Hispanics working at the [Dolphin Mall] store and instructed him to terminate [Pino]" where his "age and national origin did not . . . 'fit' the 'image' Sony was looking for" (*id.* ¶ 21) and Sanchez on multiple occasions refused to terminate Pino (*id.* ¶¶ 22–25).

[3] Instead of substantiating the allegations in their Complaint with evidence from the record, Plaintiffs simply reiterate this narrative, citing to their charges before the Florida agency (*see, e.g.,* DE 36, at 3–4).

4

regarding Sony having a young "image" (DE 29-6, at 58:14–59:21), but this hardly amounts to direct evidence that Sony discriminated on the basis of age.

## 2. Circumstantial Evidence under *McDonnell Douglas* Framework

In considering circumstantial evidence under the *McDonnell Douglas* framework, Sanchez argues, and Sony concedes for purposes of its Motion (DE 27, at 10), that he (1) was a member of a protected class with respect to national origin; (2) was qualified for the Store Manager position; (3) was terminated from the position; and (4) was replaced by someone substantially younger and non-Hispanic (Natalie Rambo).

Even assuming this prima facie case were met, Sony points out that Sanchez tried to "discredit the Houston store manager by creating rumors that he was having an affair with a sales associate," where the disclosure "would cause Olea to lose her job by implicating her as someone who knew about the affair" (DE 28, ¶ 32 (citing Declaration of Michael Johnston, Senior Human Resources Generalist, DE 29-4, ¶¶ 14–15)). As such, Sony articulates a legitimate, nondiscriminatory reason for terminating Sanchez.

"If the [employer's] proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head one and rebut it." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004). Here, Plaintiffs contend that Johnston's testimony that Sanchez created rumors is false, in addition to being based on speculation and inadmissible hearsay (DE 37, ¶¶ 24–27, 32–35), but offer almost no evidence (not even the termination letter itself) to *support* that Johnston's testimony is false. Moreover, Plaintiffs do not dispute (*see* DE 37, at 2) that "an independent third-party investigator . . . was brought in by Sony to witness and to participate *with Johnston* in [an onsite] investigation" of allegations as to Sanchez that lasted two days and involved interviews of store employees (DE 28, ¶¶ 28–30 (emphasis added)). Furthermore, Sanchez's Answer to Defendant's Sixth Interrogatory states: "I received a call from Mike Johnston from HR . . . to let me

5

know that I was terminated *based on their investigation*" (DE 38-3, at 5–6 (emphasis added)). Therefore, Plaintiffs ignore their burden under *Burdine* to show that the legitimate nondiscriminatory reason Sony articulated for Sanchez's termination is a mere pretext by offering evidence that discrimination was the real motive. *Burdine*, 450 U.S. at 253, 256 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

Nor have Plaintiffs shown a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker" (DE 36, at 11) (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328–29 (11th Cir. 2011) (Tjoflat, J.)). The Eleventh Circuit in *Smith* found a genuine issue of material fact as to discrimination where the plaintiff, a white employee, did not show "he was disciplined less favorably under the zero tolerance policy than a similarly situated black employee," but could show more severe discipline of white employees in non-supervisory roles compared to black employees in non-supervisory roles. *See Smith*, 644 F.3d at 1326–27. Here, there are no employees besides Sanchez and Pino who can testify to any discriminatory comments to fill in a convincing mosaic of circumstantial evidence. Moreover, Plaintiffs do not dispute (DE 37, ¶ 10) that over 80 percent of the employees at the store (23 employees) had a Hispanic background (DE 28, ¶ 10), and there are no facts that any other of the employees were terminated due to their Hispanic background. Instead, Plaintiffs admit (*see* DE 37, at 1) that "Olea was involved in, and approved, the hiring of Manual Batista, a Hispanic assistant store manager during the time she and Sanchez were working together overseeing the Dolphin Mall store" (DE 28, ¶ 22).[4]

### D. No Evidence to Support Sanchez's Retaliation Claim

Sony posits that Sanchez "never reported [his] perceived discrimination to Human Resources, any supervisor, or anyone in upper management" (DE 28, ¶ 19). Although Plaintiffs dispute this (*see*

---

[4] Plaintiffs also admit that "having a bilingual staff and managers was desirable in this region, and 'bilingual preferred' had been placed on advertisements for store vacancies" (DE 28, ¶ 9).

6

DE 37, ¶ 19), they offer no facts to support that Sanchez reported discrimination to Human Resources or anyone else at Sony, including Olea herself. For example, asked "[w]hy didn't you tell Mr. Johnston [Senior HR Generalist] about all these Hispanic comments and the age stuff when he met with you?" Sanchez admitted, "It didn't come to my head at that time" (DE 29-2, at 83:16-21). Nevertheless, Plaintiffs do not dispute (*see* DE 37, at 1) that Sanchez was "well trained and knowledgeable about . . . the procedures involved in reporting incidents of discrimination" (DE 28, ¶ 6), under which "an employee who believes he or she has been . . . discriminated against, or retaliated against, should immediately report the offending behavior" (*id.* ¶ 1).

Further, in responding to the EEOC's request for information on Sanchez (DE 38-5, at 2), Sony stated that the person "making [the] final decision to discharge" was Noreen Rosica, Senior Manager, Human Resources, and the persons "recommending discharge" were Michael Johnston, Senior HR Generalist, and Sandi Olea (*id.* at 6). Despite this, Plaintiffs offer no facts, in Sanchez's deposition or elsewhere, to support that Olea *communicated* to anyone else at HR the alleged narrative that Sanchez refused to follow her instructions to fire anyone on the basis of national origin or age. Instead, at his deposition, Sanchez is unable to articulate a factual basis for his retaliation claim, but simply reiterates that retaliation was a reason for the termination.

> Q    Well, I'm asking you is it your understanding that Sandi is the one that made the decision to terminate your employment?
> A    Correct.
> Q    What makes you think she terminated your employment?
> A    . . . She retaliated on me because I didn't follow her instruction on my firing of [Pino] . . .
> . . .
> Q    Did she tell you that she was firing you because you didn't follow her instructions to fire somebody?
> A    I never had a conversation with her. I was terminated by the HR manager, not by her.

(*id.* at 70:22–71:15).

Therefore, Sony argues that, *even if* Sanchez refused to fire Pino upon Olea's instructions (which was alleged in the Complaint but is not developed in the record), *and* this was statutorily

7

protected opposition,[5] Plaintiffs have provided no evidence of a causal connection to support that Sony retaliated against Sanchez for this opposition. The Court agrees.

### E. No Evidence to Support that Plaintiff Pino Was Terminated Due to His Age or National Origin

#### 1. Direct Evidence

Regarding Hispanic national origin, Pino testified in his deposition that he was told by Sandi Olea and her replacement Natalie Rambo to stop speaking Spanish (DE 28, ¶ 59; DE 37, ¶ 59; *see also* DE 29-6, at 50:12–51:8), and by Rambo to stop being so "touchy-feely" with other employees, which is something he described as part of Latin culture (*see* DE 29-6, at 51:9-16 ("I don't know if you ever dealt with Latins, but we like hugging and kissing and those are quote-unquote things that are not permissible within the organizational structure.")). Regarding his age, Pino testified that he believed he was discriminated against when Rambo instructed him to organize and move heavy merchandize (*id.* at 60:7–61:15). However, Pino did not recall Rambo ever making a comment that referenced his age (*see id.* at 60:16–61:15). This does not add up to adequate direct evidence that Pino's termination was due to an improper discriminatory motive.

#### 2. Circumstantial Evidence under *McDonnell Douglas* Framework

After the close of all discovery, Plaintiffs have provided no evidence to support their allegation from their Complaint that Pino was replaced with "another worker who was in his twenties" (DE 1-2, at 5–12, ¶ 29). Moreover, Plaintiffs do not dispute (*see* DE 37, at 5) that Pino was written up by Sanchez for being forty minutes late opening the store (DE 28, ¶¶ 62–64) and by management for "sending excessive requests to headquarters for discontinued merchandise despite directives to stop" and "admonished for causing the store unnecessary profit loss by charging the store excessive shipping

---

[5] Plaintiffs cite the *Crawford* Supreme Court case to support that "refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons" is opposition (DE 36, at 10). *Crawford v. Met. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 277–78 (2009).

costs for merchandise without prior approval" (*id.* ¶¶ 65–66). Therefore, Pino cannot proceed under the *McDonnell Douglas* framework to establish that he was discriminated against in the absence of direct evidence.

### III. CONCLUSION

Sony is entitled to judgment as a matter of law on all counts. Therefore, it is **ORDERED, ADJUDGED, and DECREED** that Defendant Sony Electronics, Inc.'s Motion for Summary Final Judgment **(DE 27)** is hereby **GRANTED**. Plaintiffs' Complaint is hereby **DISMISSED with prejudice.**[6] The Clerk shall **CLOSE** this case and **DENY as moot** all pending motions.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 29th day of March, 2018.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT of FLORIDA

cc:   All Counsel of Record

---

[6] All dates set forth in the Court's Scheduling Order (DE 21), including those for final pretrial conference and trial, are hereby canceled.

9